# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ALABAMA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br>*Plaintiffs*, <br><br>v. <br><br>WES ALLEN, in his official capacity as Alabama Secretary of State, <br><br>*Defendant*. | Case No. 2:21-cv-01531-AMM |
| IN RE REDISTRICTING 2025 <br><br>SPECIAL MASTER | Misc. No. 2:25-mc-1682-AMM |

**PLAINTIFFS' NOTICE OF SUBMISSION OF
PROPOSED REMEDIAL PLANS**

In accordance with the Special Master's Order concerning the submission of proposed remedial plans, Dkt. 2,[1] and the Court's Order setting out the criteria for remedial plans, Dkt. 1, Plaintiffs submit three proposed remedial plans for

---

[1] Docket references refer to *In re Redistricting 2025*, Misc. No. 2:25-mc-1682-AMM (N.D. Ala.) unless otherwise noted.

1

consideration. **Fairfax Plan 1** reflects the illustrative plan drafted by Plaintiffs' expert Tony Fairfax during the liability phase of this case, but with changes to the Enacted Plan limited to the Montgomery area and removing the illustrative plan's changes in the Huntsville area. *See* Ex. A (Fairfax Report). **Oskooii Plan A** and **Oskooii Plan B** reflect new plans drafted by Dr. Kassra Oskooii without any reference to racial, ethnic, electoral, or political data. *See* Ex. B (Oskooii Report). All three plans would provide a complete remedy that aligns with state policy, traditional redistricting principles, the Voting Rights Act, and the U.S. Constitution.

*First*, as the Court recognized, Dkt. 1 at 11, any plan must "completely remed[y] the prior dilution of minority voting strength and fully provide[] equal opportunity for minority citizens to participate and to elect candidates of their choice." *United States v. Dallas Cnty. Comm'n*, 850 F.2d 1433, 1442 (11th Cir. 1988). Courts "commonly rely on performance analyses to evaluate remedial plans." *Singleton v. Allen*, 690 F. Supp. 3d 1226, 1295 (N.D. Ala. 2023); *see also League of United Latin Am. Citizens v. Perry* ("*LULAC*"), 548 U.S. 399, 428-29 (2006) (considering past election performance in a district to determine whether it offered an "effective opportunity" under the VRA).

When "a performance analysis shows that a cohesive majority will 'often, if

2

not always, prevent' minority voters from electing the candidate of their choice in the purportedly remedial district, there is a 'denial of opportunity in the real sense of that term.'" *Singleton*, 690 F. Supp. 3d at 1295 (quoting *LULAC*, 548 U.S. at 427). Thus, a remedial district need not "guarantee Black voters' electoral success" in each election, but it "must guarantee Black voters an equal opportunity to achieve electoral success." *Id.* at 1294. For example, in *LULAC*, the Court concluded that an "effective opportunity district" was a district where the minorities' preferred candidates would win "13 out of 15" or 86.6% of races. 548 U.S. at 428. More recently, in *Mississippi State Conference of the NAACP v. State Board of Election Commissioners*, 782 F. Supp. 3d 336 (S.D. Miss. 2025), the panel rejected a proposed remedial district where Black-preferred candidates would have won in less than 50% of elections analyzed, *id.* at 345, but accepted one in which Black-preferred candidates would have won approximately 73% of the time, *id.* at 348.

Here, Plaintiffs' expert Dr. Baodong Liu analyzed 18 statewide elections—13 of them biracial elections—between 2014 and 2024 in the reconfigured districts in each of the three proposed plans. *See* Ex. C (Liu Report). Except for the new 2024 biracial elections, these are the same elections that the special master analyzed to confirm electoral performance in the *Milligan* remedial proceedings. *See* Ex. 1 to

3

Report & Recommendation of the Special Master at 3, *Milligan v. Allen*, No. 2:21-cv-01530-AMM (N.D. Ala. Sept. 25, 2023), Dkt. 296-1. In Fairfax Plan 1 and Oskooii Plan B, Black-preferred candidates would have prevailed in each of the elections analyzed in both Senate Districts 25 and 26. Ex. C at 2-4. In Oskooii Plan A, Black-preferred candidates would have prevailed in each of the elections analyzed for Senate District 26, and 13 of 18 elections analyzed (72.2%) in Senate District 25. *Id.* All of these plans therefore provide an effective additional opportunity district for Black voters in the Montgomery area.

*Second*, remedial plans must comply with the U.S. Constitution. Dkt. 1 at 11-12. As to population equality, each of the remedial plans not only complies with the "'under-10%' deviations the Court has previously considered to be of prima facie constitutional validity" for state legislative districts, *Connor v. Finch*, 431 U.S. 407, 418 (1977), but also reduces the population deviations from the State's Enacted Plan—some substantially. Ex. A at 13-14; Ex. B at 14.

The Secretary also continues to raise as a hazard the Supreme Court's re-argument in *Louisiana v. Callais*, No. 24-109, where it is considering the question of whether Louisiana's "intentional creation of a second majority-minority . . . district violates the Fourteenth or Fifteenth Amendments to the U.S. Constitution."

4

*Callais*, No. 24-109, 2025 WL 2180226, at *1 (U.S. Aug. 1, 2025) (Mem.). But this Court has not mandated the creation of an additional majority-minority district, and it found "no evidence (not even the Secretary's own expert witness) to support the Secretary's contention that considerations of race predominated in the plaintiffs' map-drawing process for their Montgomery-area illustrative district." *Ala. State Conf. of the NAACP v. Allen*, No. 2:21-CV-1531-AMM, 2025 WL 2451166, at *2 (N.D. Ala. Aug. 22, 2025). Rather, "nothing in Mr. Fairfax's explanation of his map-drawing process cause[d] the Court concern that he considered race-neutral criteria only after he made race-based decisions." *Id.* at *63.

As for Dr. Oskooii, he drew his two remedial plans without ever looking at racial, ethnic, political, or electoral data, and thus did not pursue any racial target in his maps, Ex. B at 4, eliminating any potential constitutional issue whatsoever. *See, e.g.*, *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 22 (2024) (holding that a map drawn without using race data was not a racial gerrymander, even where the cartographer later reviewed such data for the "lawful purpose" of confirming the map satisfied the VRA). Despite his complete lack of awareness of race until he computed the final numbers for the plans at the district level, his plans nonetheless provide effective opportunities for Black voters in reasonably configured districts.

*Third*, each of the proposed remedial plans meets or beats the State's Enacted Plan on "compactness, contiguity, respect for political subdivisions, and maintenance of communities of interest." Dkt. 1 at 13. For example, all three plans split the same number of counties (with Fairfax Plan 1 and Oskooii B including the same number of county splits as well), Ex. A at 15; Ex. B at 8, 10, and meet or beat the State's districts under the two most accepted measures of compactness, Ex. A at 14, 58-59, 153-54; Ex. B at 15. All three plans eliminate the existing municipality split in Pike Road, Ex. A at 9; Ex. B at 8, and Oskooii Plan A does not split any additional cities, towns, or CDPs beyond those already divided in the Enacted Plan, Ex. B at 8, with Oskooii Plan B splitting only one additional town to prevent an additional county split, Ex. B at 10.

Fourth, all three proposed remedial plans minimize changes to the Enacted Plan. Fairfax Plan 1 makes changes to only four Senate districts—one of them in only four VTDs, Ex. A at 5, 12—and both Oskooii Plans make changes only to three Senate districts, Ex. B at 7-8.

All three plans present acceptable options to remedy the VRA violation in Montgomery in accordance with the Constitution and traditional districting principles.

6

DATED this 9th day of October 2025.

/s/ *Alison Mollman*
Alison Mollman (ASB-8397-A33C)
Laurel Hattix (ASB-4592-E20I)
American Civil Liberties Union
of Alabama
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
amollman@aclualabama.org
lhattix@aclualabama.org

/s/ *Deuel Ross*
Deuel Ross*
NAACP Legal Defense &
Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Leah Aden*
Stuart Naifeh*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
Colin Burke*
NAACP Legal Defense &
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
 (212) 965-2200
laden@naacpldf.org
snaifeh@naacpldf.org
ksadasivan@naacpldf.org

Respectfully submitted,

/s/ *Davin M. Rosborough*
Davin M. Rosborough*
Dayton Campbell-Harris*+
Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
 (212) 549-2500
drosborough@aclu.org
dcampbell-harris@aclu.org
tlee@aclu.org
slakin@aclu.org

Jacob van Leer*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
jvanleer@aclu.org

/s/ *Sidney Jackson*
Sidney Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
Wiggins, Childs, Pantazis, Fisher, & Goldfarb
301 19th Street
North Birmingham, AL 35203
(205) 314-0500
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

7

bcarter@naacpldf.org
cburke@naacpldf.org

Jessica L. Ellsworth*
Shelita M. Stewart*
Amanda N. Allen*
Hogan Lovells LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com
shelita.stewart@hoganlovells.com
Amanda.n.allen@hoganlovells.com

David Dunn*
Hogan Lovells LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

*/s/ Jack Genberg*
Bradley E. Heard
Avner Shapiro*
Jack Genberg*
Southern Poverty Law Center
1101 17th Street NW, Suite 510
Washington, DC 20036
240-890-1735
bradley.heard@splcenter.org
avner.shapiro@splcenter.org
jack.genberg@splcenter.org

Michael Turrill*
James W. Ettinger*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
 Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
jay.ettinger@hoganlovells.com

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*
+ Practice Limited to Federal Court

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2025, a copy of the foregoing has been served on all counsel of record through the Court's CF/ECF system.

*/s/ Davin Rosborough*
Davin Rosborough
*Attorney for Plaintiffs*