# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs*, | | |
| v. | | Case No. 2:21-cv-1531-AMM |
| WES ALLEN, in his official capacity as Alabama Secretary of State, *et al.*, | | |
| *Defendants*. | | |
| IN RE REDISTRICTING 2025 SPECIAL MASTER | ) ) ) ) | Misc. No. 2:25-mc-1682-AMM |

### Defendant's Comments on
### <u>Proposed Remedial Plans</u>

Defendant, Secretary of State Wes Allen, respectfully provides comments on plans submitted by Plaintiffs and an anonymous person for the Special Master's consideration. Secretary Allen will separately submit maps overlaying the Fairfax and Oskooii plans with the Enacted Plan. He has also provide a performance analysis by expert M.V. Hood III based on recent elections.

### 1. The proposed plans are racial gerrymanders.

Each of the proposed plans was drawn with a racial target. That's a requirement in this process. The Court has instructed the Special Master to submit three plans that each have "an additional district in the Montgomery area in which Black voters either comprise a voting-age majority or something quite close to it." *Alabama NAACP* Doc. 302 at 11. And each proposed plan hits the racial bullseye.

The racial sorting used in developing the proposed plans is evident from the statistics of the new "opportunity" districts. In Fairfax Remedial Plan 1, for instance, the drafter moved around 27,000 black people from SD26 to SD25 and moved around 37,000 white people out of SD25. *See* Population Summary, doc. 7-1 at 44-45, compared to the Enacted Plan statistics, doc. 7-1 at 139-40. He accomplished this (as all the plans do) by cracking the heavily black populated portions of Montgomery between two districts. In any other context, when not done in furtherance of electing a Democrat, Plaintiffs would argue that the area split was a community of interest which should be held together. We know this is true because *these very Plaintiffs* complained in their challenge to Alabama's 2021 congressional plan that, "[a]mong other deviations from traditional redistricting principles, the districts in HB1 split[] Montgomery County." Compl. ¶8, *Milligan v. Allen*, No. 2:21-cv-1530 (Nov. 16, 2021), ECF 1.

Mr. Oskooii reported Voting Age Population statistics. As compared to the enacted plan, SD25 went from to 29.01% BVAP to 49.63% BVAP in Oskooii Remedial A, meaning he moved over 20,000 black voters into SD25 (again by cracking Montgomery). Doc. 7-3 at 16. In Oskooii Remedial B, SD25's BVAP was raised to 53.56%, accomplished by shifting over 24,000 black voters into SD25 (around 22,000 from SD26 and around 2,500 from SD30).

Precinct splits are another indication of racial sorting. Oskooii B splits several precincts in Elmore County between SD26 and SD30 (Blue Ridge Church, Cains Chapel Life Ctr, Crenshaw Park, Fain Sr Ctr, and Wetumpka Civic Ctr). No explanation was given for why these splits are needed, and there is insufficient data at this time to know if the splits are along racial lines.

If these plans are used as the basis for a Special Master-recommended plan, the racial sorting conducted by Fairfax and Oskooii doesn't go away, even if the Special Master alters the plans without consideration of race. The racial gerrymandering has already been conducted and is baked into any plan developed that uses the Fairfax or Oskooii plans as a starting point.

## 2. The proposed plans make more changes than necessary for a "remedy."

As the Special Master noted in *Milligan*, for purposes of a court-drawn plan, a court's "modifications of a state plan are limited to those necessary to cure any

constitutional or statutory defect." *Milligan* doc. 295 at 26. Why, then, do the Fairfax and Oskooii plans make changes in Elmore and Chilton Counties?

The plans submitted by "D.D." may have their own problems, but they show that one can draw a second district that hits the racial target of "50% or something close to it" by limiting all changes to those between SD25 and SD26, without altering the Legislature's design for any other district. All of "D.D.'s" plans, for instance, generally utilize the Enacted Plan's division line between Districts 25 and 30, while each of the Plaintiffs' submitted plans ignores the Enacted Plan's district lines and instead draws District 26 along the Elmore County line, splitting municipalities that the Alabama Legislature had kept whole.

The proposed remedies should be rejected to the extent that they make more changes than necessary to comply with the Court's order.

Respectfully submitted,

        Steve Marshall
          *Attorney General*

        <u>/s/ James W. Davis</u>
        Edmund G. LaCour Jr. (ASB-9182-U81L)
          *Solicitor General*

        James W. Davis (ASB-4063-I58J)
          *Deputy Attorney General*

        Richard D. Mink (ASB-4802-M76R)
        Misty S. Fairbanks Messick (ASB-1813-T71F)
        Brenton M. Smith (ASB-1656-X27Q)
        Benjamin M. Seiss (ASB-2110-O00W)
          *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama  36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

Michael P. Taunton (ASB-6833-H00S)
Riley Kate Lancaster (ASB-1002-X86W)
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone (205) 251-8100
MTaunton@Balch.com
RLancaster@Balch.com

*Counsel for Secretary of State Allen*